IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NEVADA FIRST FEDERAL, LLC,<br>Plaintiff,<br><br>    v.<br><br>ARNOLD MACCIOCCA et al.,<br>Defendants. | CIVIL ACTION<br><br>NO. 15-1304 |

<u>MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS</u>

**Baylson, J.**                                                                                                        **July 21, 2015**

Plaintiff Nevada First Federal, LLC ("Plaintiff" or "Nevada First") filed this action for mortgage foreclosure against Defendants Arnold and Mary Ann Macciocca ("Defendants") on March 11, 2015. Presently before the Court is Defendants' Motion Pursuant to Rule 12(b)(1) to Dismiss Complaint for Lack of Subject Matter Jurisdiction. Defendants argue that this Court lacks subject-matter jurisdiction under the <u>Rooker-Feldman</u> doctrine because Plaintiff had lost a previous foreclosure action against Defendants in state court. For the following reasons, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

I.      Factual and Procedural Background

   A.      The Mortgage

On November 15, 2006, Defendants secured a $2,320,000 mortgage from Sovereign Bank for a property in Broomall, Pennsylvania. ECF 1 ¶¶ 6, 9; ECF 1 Ex. A. As part of the loan agreement, Defendants agreed to make monthly payments of principal plus interest, and adhere to several affirmative covenants that required them to furnish the lender with financial statements, maintain a minimum debt service coverage ratio of 1.25 to 1, and pay all taxes when due. ECF 1 Ex. B. On April 8, 2011, Sovereign Bank sent a letter to Defendants stating that

Defendants were in default because they had failed to comply with the affirmative covenants. ECF 4 Ex. C.

On November 15, 2011, First Commerce, servicer for Plaintiff, which had acquired the rights to the mortgage, adjusted the interest rate on Defendants' loan as planned for in the loan documents.[1] ECF 4 Ex. E, at 24:9–20, 97:21–98:4. However, First Commerce calculated the new rate incorrectly; instead of adding 2.5 basis points to the U.S. Treasury Securities Rate, First Commerce added 2.5 percentage points to the Treasury Securities Rate, which was over 100 times the appropriate amount (a basis point is $1/100^{th}$ of a percent of interest).[2] ECF 4, at 3; ECF 4 Ex. E, at 98:5–24. Despite being charged an overly high interest rate, Defendants made monthly payments on the loan through November 2012. ECF 4 Ex. E, at 79:18–80:4. In December 2012, however, Defendants failed to make their payment, and they again missed their monthly payments in April through November 2013. Id.

B.     **The State Foreclosure Action**

On April 3, 2013, Plaintiff filed a complaint in mortgage foreclosure in the Court of Common Pleas of Delaware County, Pennsylvania. ECF 4 Ex. C. Plaintiff alleged that the Promissory Note and Mortgage entered into by Defendants were in default in virtue of: (a) Defendants' failure to make payments when due; (b) Defendants' failure to maintain a debt service coverage ratio of not less than 1.25 to 1, as required by an affirmative covenant in the Business Loan Agreement; and (c) Defendants' failure to provide requested financial information. Id. ¶ 10. According to the complaint, Defendants had been in default since April 8,

---

[1] On September 23, 2011, Sovereign Bank assigned the rights, title, and interest in and to the Defendants' mortgage to Nevada First, which is a company that purchases commercial and industrial loans on the secondary market. ECF 1 Ex. E; ECF 4 Ex. E, at 31:17–20. In September 2011, Defendants began to make their mortgage payments to First Commerce, an entity that services loans on behalf of Nevada First. ECF 4 Ex. E, at 24:9–20, 77:6–9.

[2] Pursuant to this miscalculation, First Commerce charged the Defendants 6.41% in interest – the Treasury Securities Rate of 0.91% plus 2.5 percentage points, plus 3.0 percentage points for the default. Id. at 98:5–24. According to a First Commerce representative, if First Commerce had calculated the new rate accurately and the loan was not in default, the interest rate would have been only 0.935%. Id. at 100:4–6.

2011. Id. ¶ 11. Plaintiff alleged that at the time of the filing, $2,282,286.45 in unpaid principal, interest, and fees was due and payable, and that interest would continue to accrue at the default rate of $381.41 per day. Id. ¶¶ 12–13. Plaintiff requested judgment for foreclosure of the mortgaged premises in the amount of $2,282,286.45 plus per diem interest of $381.41, costs, and any further relief that the court deemed just and appropriate. Id. ¶ 15.

On August 8, 2014, a bench trial on the matter was held before the Honorable Charles B. Burr of the Court of Common Pleas of Delaware County. ECF 4, at 3. On August 12, Judge Burr entered a nonsuit and dismissed Plaintiff's foreclosure action with prejudice. Id.; ECF 4 Ex. F. As indicated in the trial transcript, Judge Burr's decision to grant a nonsuit was based on his finding that there was a significant gap in proof. ECF 4 Ex. E, at 120:19–121:24. The court agreed that there was something outstanding on the loan but was not sure what the correct amount was or whether Plaintiff's numbers had been calculated properly in accordance with GAAP. ECF 4 Ex. E, at 120:19–21:24. Judge Burr reasoned:

> "[A]ssuming there's a 'default' . . . for failure to provide this financial information, that gets you halfway up the football field. You're at the 50 yard line. I don't think you can cross the goal line though because assuming that to be true, we don't know what the proper calculation under GAAP, that is the Generally Accepted Accounting Principles doctrine, applies in this case and calculating the amount due under that procedure, what that would be. We don't know."

Id.

Following post-trial motion practice, Judge Burr denied Plaintiff's motion for post-trial relief. ECF 4 Ex. A. Around the same time, Defendants made several offers to Plaintiff to make payments on the mortgage at the correct interest rate. ECF 4, at 4; ECF 4 Ex. D. However, Plaintiff did not accept these payments. ECF 4, at 4.

3

### C. The Federal Foreclosure Action

Plaintiff filed the current federal action for mortgage foreclosure on March 11, 2015. ECF 1. In this suit, Plaintiff alleges that the Promissory Note and Mortgage are in default by virtue of: (a) Defendants' failure to make payments when due since December 15, 2012; and (b) Defendants' failure to "pay outstanding real estate taxes related to the property at issue serving as security for the Promissory Note totaling $37,150.69." Id. ¶ 13. As a result of the alleged default, Plaintiff claims that Defendants owed $2,859,454.70 in principal, accrued interest, charges and fees, and real estate taxes as of January 5, 2015. Id. ¶ 15. Plaintiff seeks a judgment fixing the amount due on the mortgage; directing that Defendants pay the amount due plus interest, attorney's fees and costs; directing that the property be sold to satisfy the amount due; and barring and foreclosing Defendants of all equity of redemption in and to the property. Id. ¶ 21.

On March 27, 2015, Defendants moved to dismiss the complaint, arguing the Rooker-Feldman doctrine precludes Plaintiff from bringing a foreclosure action in this court because its first foreclosure action on the mortgage in Pennsylvania state court was dismissed. ECF 4.

## II.  Standard of Review

A court "must grant" a Rule 12(b)(1) "motion to dismiss if it lacks subject-matter jurisdiction to hear the claim." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may present either a facial or a factual attack. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack concerns "an alleged pleading deficiency," whereas a factual attack concerns "the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." Id. (alteration in original) (internal quotation marks omitted).

Defendants' challenge here is factual, not facial, because the Motion challenges whether the district court has actual jurisdiction to hear the case. Id. The fact that the Rule 12(b)(1) motion makes a factual attack has three important procedural consequences for this Court: (1) "no presumption of truthfulness attaches to the allegations of the plaintiff"; (2) the plaintiff has the burden of proving subject matter jurisdiction; and (3) the court has the authority to review evidence outside the pleadings and make factual findings that are decisive to determining jurisdiction. Id. at 139, 145.

### III.  The Parties' Contentions

Defendants contend that this Court lacks subject-matter jurisdiction to hear the case under the Rooker-Feldman doctrine, as Plaintiff lost its case in state court and is complaining of injury related to the state court decision. ECF 4, at 4. Defendants argue that to rule on this case, the Court would have to overrule the final order in the Court of Common Pleas of Delaware County dismissing Plaintiff's count of mortgage foreclosure. Id. According to Defendants, the Court would have to determine "that there was a default covering the same period of time covered by the Delaware County action" and "that the interest rate is contrary to that as previously determined in the Delaware County action." Id. Both decisions, Defendants assert, are barred by the Rooker-Feldman doctrine. Id.

Plaintiff argues that Rooker-Feldman does not apply because the current foreclosure action is premised on defaults that were not litigated in state court. ECF 5, at 6. Plaintiff states that the claims of default in this action—"default based on non-payment and failure to pay real estate taxes"—are "completely distinct from" the claims of default in the state court action—"default based on failure to maintain an adequate debt service coverage ratio and failure to provide financial information." Id. Plaintiff further asserts that this action is proper because

Defendants have continued to be in default for failure to make payments and for failure to pay taxes after the Court of Common Pleas rendered its decision. Id. at 8–9. Plaintiff asserts that, in accordance with Third Circuit precedent, each month in which Defendants failed to make a payment that was due represents a separate event of default under the loan documents and is thus a separate cause of action. Id. at 9.

## IV. Relevant Law

The Rooker-Feldman doctrine precludes a federal district court from exercising subject-matter jurisdiction over a suit that is essentially an appeal of a state court decision. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005) (holding that, under the Rooker-Feldman doctrine, federal jurisdiction over an action did not terminate when state court entered judgment in a parallel action because the plaintiff had filed federal action to protect itself in the event it lost in state court, not to undo the state court judgment); Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F. 3d 159, 166 (3d Cir. 2010) (holding that Rooker-Feldman doctrine did not deprive the court of jurisdiction over a § 1983 action alleging that losses in state court were the result of a conspiracy because the plaintiff was not complaining of injuries caused by the state court judgment).

The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. It is based on the principle that only the United States Supreme Court, and not a federal district court, has the authority to review state court judgments. Id. at 292 (explaining that "§ 1257, as long interpreted, vests authority to review a state court's judgment solely in this

Court"); Great Western, 615 F.3d at 164 (noting that "federal appellate review of [a] state-court judgment" is "a task entrusted by statute solely to the Supreme Court").

Rooker-Feldman is a "narrow doctrine" that applies only in "limited circumstances." Exxon Mobil, 544 U.S. at 291; Great Western, 615 F.3d at 169 (internal quotation marks omitted). In Great Western Mining & Mineral Co. v. Fox Rothschild LLP, the leading Third Circuit case following Exxon-Mobil, the court defined four requirements that must be met for the Rooker-Feldman doctrine to bar a claim: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment[]; (3) [the] judgment[] was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgment[]." Great Western, 615 F.3d at 166 (internal quotation marks omitted).

"The second requirement—that a plaintiff must complain of injuries caused by the state court judgment—" is an "inquiry into the source of the plaintiff's injury." Id. The Rooker-Feldman doctrine applies only when the source of the plaintiff's injury is a state court judgment; "when the source of his injury is the defendant's actions . . . the federal suit is independent" and not precluded by Rooker-Feldman. Id. at 167. It is thus "critical" for a court to scrutinize the injuries complained of and "identify . . . suits that profess to complain of injury caused a third party," but was actually caused by a state court judgment. Id. For Rooker-Feldman to bar jurisdiction, the injury must have been "*produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Id. (emphasis added) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)) (internal quotation marks omitted).

7

The second element of the Great Western test is closely related to the fourth element, that plaintiff invite review and rejection of the state court judgment. Id. at 168. This requirement targets whether the plaintiff's claims will require the district court to conduct appellate review of the state court decision. Id. Appellate review occurs where the district court reviews proceedings already conducted by the state court to "determine whether it reached its result in accordance with law." Id. at 169 (quoting Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1143 (10th Cir. 2006)).

This type of prohibited appellate review does not always occur in cases in which a plaintiff tries to litigate in federal court a matter that was previously litigated in state court. Id. As the Supreme Court has emphasized, a district court is not denied jurisdiction simply because a party attempts to litigate in federal court a matter that was previously decided in state court. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). "If a federal plaintiff presents an independent claim, even one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."[3] Id. (alteration in original) (internal quotation marks omitted). Thus, an action that asks a district court to "tr[y] a matter anew . . . without concerning itself with the bona fides of the prior judgment" does not require the federal court to conduct appellate review in a way that would bar subject-matter jurisdiction over the case. Great Western, 615 F.3d at 169 (quoting Bolden, 441 F.3d at 1143).

V.      Analysis

Here, Plaintiff brings a foreclosure action in federal court nearly two years after it brought a foreclosure action on the same property in Pennsylvania state court. In the state court

---

[3] "[T]he Rooker-Feldman inquiry is distinct from the question of whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) defeats the federal suit." Great Western, 615 F.3d at 170. Since Defendants did not raise preclusion arguments, the Court will not address them at this time.

complaint, Plaintiff alleged the "Promissory Note and Mortgage [were] in default by virtue of: a) the failure of Defendants to make payments when due; b) the failure to maintain a Debt Service Coverage Ratio of not less than 1.25:1 as required by an Affirmative Covenant in the Business Loan Agreement; and c) the failure to provide requested financial information." ECF 4 Ex. C ¶ 10. In its federal court complaint, Plaintiff alleges that the Promissory Note and Mortgage are in default by virtue of Defendants' failures to: "(a) make payments when due [s]ince December 15, 2012; and (b) pay outstanding real estate taxes related to the property at issue." ECF 1 ¶ 13. There is not a complete overlap of the bases for foreclosure in both suits; failure to pay real estate taxes had not been raised in the state court action, and failure to maintain an adequate debt service coverage ratio and to provide financial information have not been raised in this federal action.

## VI. The Court Will Segregate Plaintiff's Claims into Three Categories

### A. Defendants' Alleged Defaults After August 12, 2014

Plaintiff's complaint is based in part on defaults due to non-payment that were not, and could not have been, alleged in the state court action against Defendants. Defendants allegedly failed to make monthly payments prior to April 3, 2013, when Plaintiff filed its mortgage foreclosure action in state court, alleging, *inter alia*, default due to non-payment. Then, after the state court granted a nonsuit on these claims on August 12, 2014, Defendants again allegedly failed to make monthly payments. Each missed installment payment under a promissory note accompanying a mortgage constitutes a separate default. See Bd. of Tr. of the Dist. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp., 43 F.3d 852, 857 (3d Cir. 1994) (holding that a cause of action for withdrawal liability due to missed pension fund payments accrued on each date that a payment was not made because "[i]n an installment contract, a new cause of action

arises from the date each payment is missed"); Prop. Acceptance Corp. v. Zitin, 414 F. Supp. 2d 534, 538 (E.D. Pa. 2005) (concluding that the broad language used by the court in Kahle supports the notion that each missed payment under a promissory note should be treated as a separate and independent default). Thus, "[c]onsistent with general principles governing installment obligations, each missed payment creates a separate cause of action." Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 195, 208 (1997) (holding that in an action for unpaid withdrawal liability, each missed payment creates a separate cause of action with its own six-year limitations period).

Following Kahle and Bay Area Laundry, the Third Circuit applied this reasoning in a non-precedential case concerning foreclosure actions. In Fairbank's Capital Corp. v. Milligan, the court held that a foreclosure action is not barred by res judicata or collateral estoppel, even if there was a judgment on a prior foreclosure action, if the new foreclosure is based on subsequent and separate alleged defaults. 234 F. App'x 21, 23 (3d Cir. 2007). These post-state suit missed payments are new and actionable events of default, separate from any default based on the alleged pre-state suit missed payments.

To the extent that the current suit is based on the later alleged missed payments, the action can therefore proceed and is not barred by the Rooker-Feldman doctrine.[4]

### B.   Defendants' Defaults Not Alleged in the State Court Action

The Rooker-Feldman doctrine does not apply to the current foreclosure action to the extent it is based on Defendants' alleged failure to pay taxes. These are separate events of default from the alleged failures to maintain the required debt service coverage ratio, to provide

---

[4] Although not asserted by Defendants in their Motion to Dismiss, res judicata or collateral estoppel issues might apply because Plaintiff's claims regarding the later alleged missed payments appear to contradict legal conclusions the state court reached in the prior foreclosure action. They do not, however, prevent the Court from exercising jurisdiction under the Rooker-Feldman doctrine. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005).

requested financial information, and to make monthly payments that were litigated in the state court foreclosure action. To rule on these facts, this Court need not review the state court's determination that there was no basis for foreclosure on those grounds in an action regarding Defendants' alleged failure to pay property taxes.

### C.    Events Prior to August 12, 2014

The closer question is whether Plaintiffs can now allege default based on the same missed payments that formed the basis for the state court ruling. In the current suit, Plaintiff seeks foreclosure in part because Defendants allegedly have not made payments on the mortgage since December 15, 2012, and requests damages based on default beginning in December 2012. The Delaware County Court of Common Pleas granted a nonsuit of Plaintiff's first foreclosure action after trial, on August 12, 2014, indicating that it had found there had been no default due to failure to pay as of August 2014.

There are no precedential Third Circuit cases considering whether the Rooker-Feldman doctrine bars jurisdiction over a second mortgage foreclosure suit in this scenario.

The Court concludes Rooker-Feldman does bar Plaintiff's foreclosure action to the extent it is based on default due to alleged failure to make payments before August 12, 2014. To adjudicate Plaintiff's claims stemming from these alleged non-payments would require the Court to review the correctness of the state-court judgment that there was no basis for foreclosure on the grounds of failure to make monthly payments as of that date.

This Court believes that the Great Western facts are sufficiently distinguishable to reach a result that the Rooker-Feldman doctrine does bar this action to the extent it is based on failure to make payments before August 12, 2014. It is important to note that Great Western concerned allegations that a state judicial process was corrupted by conspiracy and violation of due process,

11

which is a totally different type of case than foreclosure on a debt. This Court will adopt the ruling and rationale of the Second Circuit in Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423 (2d Cir. 2014). Although the procedural history of Vossbrinck is more complicated, it is basically the same type of case. The bank had moved for foreclosure in state court, which was granted. The defendant in the state court case then brought an action in U.S. District Court for the District of Connecticut to have the foreclosure declared null and void because of fraud by the defendants in the state-court action. The Second Circuit applied Rooker Feldman to conclude that there was not jurisdiction as follows:

> "To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, Rooker-Feldman bars Vossbrinck's claim. Vossbrinck 'invite[s] . . . review and rejection' of the state judgment. He is asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose. This would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error. And the injury of which Vossbrinck 'complains' in this claim for relief, and which he seeks to have remedied, is the state foreclosure judgment. This is evident from the relief Vossbrinck requests – title to and tender of his property and, in his brief on appeal, to have the state judgments declared 'void.'"

Id. at 427. This Court concludes that the Second Circuit ruling in Vossbrinck authorizes the grant of the motion to dismiss as to those facts ruled upon by the state court as of August 12, 2014.

**VII. Conclusion**

The Court will therefore **GRANT** the motion to dismiss to the extent that the complaint in this case is based on the Plaintiff's claim of foreclosure based on Defendants' failure to pay prior to August 12, 2014. For all other claims, the motion to dismiss is **DENIED.**

An appropriate order follows.

O:\CIVIL 15\15-1304 nevada first v macciocca\15cv1304.Memorandum of Law MTD.docx